POLEN, J.
Daniela Dadurian appeals the final summary judgment entered in favor of the appellee, Mar-A-Lago Club, L.L.C., L.C. (hereinafter, “the Club”). We affirm.
Dadurian became a member of the Club on May 14, 2004. She paid a $100,000 membership deposit and agreed to be bound by the following rules:

REPAYMENT OF MEMBERSHIP DEPOSIT

The Club promises to repay to me the Membership Deposit which I pay to the club upon the earlier of the following:
(a) thirty (30) years from the date of my admission to the Club, or
(b) within thirty (30) days after the reissuance of my membership by the Club (once resigned).
[[Image here]]

DEPOSIT, DUES AND CHARGES

A. Membership deposits shall be repaid to Active Members upon the earlier of (a) thirty (30) years from the date of the Active Member’s admission to the Club or (b) thirty (30) days after the reissuance of the membership by the Club (once resigned) as provided in this paragraph.... Reissuance will commence on a first-resigned, first-reissued basis after the initial issuance of all memberships.
[[Image here]]
Resignation: Any member may resign from the Club by written notice to the Admissions Committee, provided all indebtedness to the Club has been paid. Upon resignation, prepaid annual dues will be refunded on a pro rata basis based on the number of months remaining in the Membership Year. [Emphasis added.]
Pursuant to the rules, annual dues for the Club are due on November 1 of each year; if a member does not pay his or her dues, that member’s membership may be discontinued by the Club. However, in the Club’s discretion, a discontinued membership may be reinstated upon payment of all outstanding dues and fees. According to the rules, reinstatement would allow a member to continue the membership or to properly resign the membership, making the member eligible for an earlier refund of the membership deposit. If a member is not reinstated, the member will have no right of refund until thirty years from the date of the member’s admission. A member who validly resigns is entitled to a return of the deposit at the earlier of (a) thirty years from the date of the member’s admission to the Club or (b) thirty days after the “reissuance” of the membership by the Club. According to the Club, “reis-suance” of memberships will begin to occur after the “initial issuance of all memberships.” If the “initial issuance of all memberships” does not occur within thirty years, then resigned members will receive a refund of the membership deposit on the thirtieth anniversary of joining the Club.
On July 10, 2007, Dadurian tendered written notice that she was cancelling her membership. The Club accepted Daduri-an’s resignation by written letter, which stated, in part:
As you know, membership deposits are to be repaid upon the earlier of 30 years from the date of your admission into the Club, or 30 days after reissuance of your membership by the Club. The process of reissuing membership commences once we reach our cap of five hundred (500) active members and proceeds down the waiting list on a first resigned, first reissued basis as new memberships are sold.
On December 27, 2007, at Dadurian’s request, the Club reinstated her member *692 ship and sent her a statement which stated, that in order to rejoin, she would have to pay past-due dues in the amount of $11,608.50. Dadurian submitted partial payment. In January 2008, Dadurian received a bill stating that her account was past due. In February, she received a bill stating that her account was delinquent and that her membership would be suspended if the balance was not paid immediately. She received similar letters in March and April. In May, she made a partial payment to the Club. In June, July, and August, she received statements indicating that her balance was not paid in full.
In September, Dadurian submitted written notice to the Club that she was suspending her membership. In October, the Club’s managing director wrote Dadurian a letter, stating that her request for a leave of absence from the Club could not take place until her balance was paid in full. Dadurian did not pay the balance. From November 2008 through February 2009, Dadurian received invoices from the Club stating that her unpaid balance was $14,369.90 and that her membership was suspended.[1] Although Dadurian claims that she did not understand the managing director’s letter, she did not ask the Club for clarification because she is “a very busy person.”
In March 2009, Dadurian’s counsel sent a letter to the Club confirming that Dadu-rian had resigned her membership, and that consistent with her resignation, she had not paid the membership dues for the 2008-2009 season. Dadurian’s counsel also made demand for repayment of her $100,000 deposit.
In May, Dadurian filed suit against the Club for breach of the membership documents and for declaratory relief. Thereafter, the Club sent written notice to Daduri-an, stating that her membership would be discontinued effective fifteen days from the date of receipt of the letter since she was delinquent in the payment for charges incurred at the Club; included in the charges were the annual dues for the 2008-2009 season. Dadurian did not tender payment within fifteen days; however, she submitted payment of $2,156 to the Club based on a previous invoice.[2] The Club rejected the payment and discontinued Dadurian’s membership.
Dadurian’s second amended complaint requested declaratory relief; specifically, she asked the trial court to interpret the rules of the Club pertaining to return of membership deposits. Dadurian argued that the Club rules require that Club memberships of resigned members be reissued once the Club had issued a total of 500 memberships, whether or not the 500 were still current members. In response, the Club filed a motion for summary judgment as to Dadurian’s second amended complaint and also as to count II of its amended counterclaim seeking declaratory relief.
The Club argued that the “initial issuance of all memberships” will occur when the Club reaches. 500 Members who at that time are entitled to use the Club. Since the Club had not yet reached 500 current members, it argued that the initial issuance of memberships had not yet occurred and no membership deposits from members who have resigned had been refunded. The Club maintained that it has always interpreted “members” to mean 500 current members, and that the Town of *693 Palm Beach has always accepted that interpretation.[3]
After a hearing, the trial court granted the Club’s motion for summary judgment, finding that Dadurian did not validly resign pursuant to the rules because she had not timely paid her bills. Since the trial court found that her membership was discontinued, it determined that Dadurian was entitled to a return of her membership deposit only thirty years after admission to the Club. This appeal followed.
We need not reach the issue of whether the trial court correctly interpreted the Club’s rules relating to the reissuance of deposits. We agree with the trial court that appellant did not, and could not under the rules, validly resign from the Club because she had not timely paid her bills. Therefore, Dadurian’s membership was discontinued. Pursuant to the rules of the Club, a discontinued member is entitled to a return of his or her deposit only thirty years after admission to the Club.
We also reject Dadurian’s contention that summary judgment was improperly entered because questions of fact remain regarding the amount of dues and charges owed; whether the fifteen-day notice was proper; and whether she tendered the correct amount to have her membership placed in a “resigned” status rather than a “discontinued” status. The amount of appellant’s unpaid balance is not a material fact which should have precluded summary judgment. The only material fact is that Dadurian was in arrears, a point she does not dispute. Under the rules, an arrear-age precludes a valid resignation.
We further conclude that the notice was sufficient and complied with the rules of the Club. Finally, the Club’s rules are explicit that once a member has been discontinued, reinstatement is at the sole discretion of the Club. Therefore, whether or not appellant tendered the correct amount to have her membership placed in a “resigned” status rather than a “discontinued” status is immaterial because there is no requirement for the Club to accept payment in lieu of discontinuance after written notice has been provided. Regardless, the evidence is undisputed that appellant did not tender full payment within fifteen days after receiving the notice.

Affirmed.

GROSS, J., and BLOOM, BETH F., Associate Judge, concur.

. Because she had not paid her previous balance of $2,175.65 from the previous season, she was billed for annual dues for the next season, making the total amount owed $14,369.90.

. It is not clear why the balance on this statement was only $2,156 and did not include the dues for the 2008-09 Club year.

. The declaration of use agreement between the Town of Palm Beach and the Club provides that the Club may not have more than 500 members.